IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MICHAEL BASILE, | No. C 06-5371 SBA (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| ROBERT L. AYERS, JR., Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner David Michael Basile, a state prisoner incarcerated at San Quentin State Prison (SQSP) in San Quentin, California, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by the California Board of Parole Hearings (BPH).[1] Respondent Warden Robert L. Ayers, Jr. has filed an answer.[2] Petitioner has filed a traverse. The matter is now submitted for the Court's consideration of the merits of the petition. For the reasons discussed below, the petition will be DENIED as to all claims.

## BACKGROUND

In 1984, Petitioner was convicted of first degree murder in the Santa Clara County Superior

---

[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings. Cal. Penal Code § 5075(a).

[2] In its February 27, 2007 Order, the Court noted that it was the State's practice in prisoner petitions challenging parole decisions to designate James Davis, the Chairman of the Board of Parole Hearings as the proper Respondent. The Court then substituted him as Respondent. The State claims that under Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section § 2254, the proper respondent is Robert L. Ayers, Jr., the warden at SQSP where Petitioner is incarcerated. (Answer at note 1.) Accordingly, the Court directs the Clerk of the Court to substitute Warden Ayers as Respondent in this action.

Court. He was sentenced to a term of twenty-five years to life in state prison.

After serving more than twenty-one years in prison and being denied parole at prior parole hearings, Petitioner was found unsuitable for parole by the BPH at his parole suitability hearing on November 8, 2005.

The present petition does not challenge Petitioner's underlying conviction. Rather, Petitioner seeks federal habeas corpus relief from the BPH's decision finding him not suitable for parole on the ground that the decision does not comport with due process. Petitioner claims that the BPH's decision was (1) arbitrary and capricious because it relied on unchanging circumstances and (2) not supported by any evidence.[3]

## I. The Commitment Offense

At Petitioner's 2005 parole suitability hearing, the BPH considered the following information, derived from his Life Prisoner Evaluation Report, about the murder of his brother's wife, Toni Rae Mahaffey:

> On September 22, 1982, Robert Basile, brother of [Petitioner] and common-law husband of the victim, contacted the Sunnyvale Department of Public Safety and requested that police and an ambulance respond to his residence at 1352 Kingfisher Ave., #7 Sunnyvale, California. The arriving officers discovered the victim lying on the living room floor. The responding personnel attempted to find a pulse on the victim's wrist and noted that the trunk of her body felt lukewarm. In the process of attempting to locate a pulse, the victim's body was turned slightly, at which time they noticed that rigor mortis had set in on the upper arms and facial area. They also observed a blue bandana wrapped around the victim's neck and it appeared to be tied tightly with a knot.

---

[3] Petitioner's third claim alleges that the state superior court's denial of his petition violated due process because the court did not engage in a fair and meaningful review. The Court finds that this claim is not cognizable under § 2254 because errors in the state post-conviction review process are not addressable through federal habeas corpus proceedings. See Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.), cert. denied, 493 U.S. 1012 (1989). Such errors do not generally represent an attack on the prisoner's detention and therefore are not proper grounds for habeas relief. See id. They instead generally pertain to the review process itself and not to the constitutionality of a state conviction. See, e.g., Franzen, 877 F.2d at 26 (delay in state habeas proceeding not addressable in federal habeas); Hopkinson v. Shillinger, 866 F.2d 1185, 1218-20 (10th Cir. 1989) (state court's summary denial of petition for post-conviction relief is procedural deficiency in review process that does no violence to federal constitutional rights). Accordingly, the Court finds that Petitioner is not entitled to habeas relief as to this claim.

> Dr. John Hauser testified during the course of the preliminary examination held for the defendant that 19-year-old Toni Rae Mahaffey died as a result of strangulation by ligature. Evidence of intravenous injection was observed on the victim's arm and it was noted that the laboratory analysis of the victim's blood was presumptively positive for cocaine, cocaine metabolite and morphine. Subsequent investigation revealed that Robert Basile had purchased a $100,000.00 life insurance policy in the name of the victim. It was further noted that Robert Basile had solicited numerous individuals to kill his wife so he could collect the insurance money . . . . During the course of the preliminary examination, witness Gary Nix testified that [Petitioner], David Basile, had admitted to him that he was responsible for the strangulation death of the victim. It was further noted that the witness indicated that [Petitioner] had previously attempted to kill the victim by injecting her with a spoon of heroin two weeks earlier. Witness Robert Johanson testified that he had been solicited by [Petitioner] to participate in the murder of the victim. He went on the testify that in September of 1982, [Petitioner] arrived at his residence and stated "I took care of it, got it over with." Johanson stated that [Petitioner] described the murder to him. According to Johanson's testimony, [Petitioner] held the victim down and covered her face with a pillow for 12 to 18 minutes. Johanson further testified that David Basile told him he had used a bandana around the victim's neck to make sure she was dead.

(Resp't Ex. 3, Life Prisoner Evaluation Report at 1.)

Alternatively, in the "Prisoner's Version" section of his Life Prisoner Evaluation Report, Petitioner states that while he knew that he had "some involvement" in the murder, he also "knew that [he] didn't kill [the victim]." (Id. at 1-2.) Petitioner argues that his brother coerced him into participating in the murder by refusing to bail him out of jail on a previous occasion unless Petitioner agreed to help kill the victim. (Id. at 2.) Petitioner claims that he was culpable because he went to his brother's apartment the night of the murder and that he "put [the victim] in a strangulation hold. (Id.) However, he alleges that he "left the apartment before she died." (Id.)

## II. Parole Proceedings

At his 2005 parole suitability hearing, the BPH considered Petitioner's individual circumstances tending to show parole suitability and unsuitability. The panel considered Petitioner's central file and prior hearing transcripts in making its decision to find Petitioner unsuitable for parole. Petitioner was to receive a subsequent parole hearing the following year.

The panel stated that its decision was based primarily upon "the criminal offense" and Petitioner's prior criminal history. (Resp't Ex. 4, Subsequent Parole Cons. Hr'g Tr. at 50.) The commissioner stated that Petitioner had failed to accept responsibility for his first attempt at murdering the victim by injecting her with heroin. (Id.)

### III.   State Habeas Proceedings

After the BPH's ruling, Petitioner sought habeas corpus relief in the state courts. On May 26, 2006, the Santa Clara County Superior Court denied his petition in a reasoned decision in which it concluded that "Petitioner's involvement, and the crime itself, was more egregious than . . . other instances of first degree murder." (Resp't Ex. 5, Santa Clara County Super. Ct. May 26, 2006 Order at 1.) The California Court of Appeal for the Second District summarily denied his petition on June 26, 2006. (Resp't Ex. 6.) The Supreme Court of California also denied his petition without comment on August 23, 2006. (Resp't Ex. 7.)

## DISCUSSION

### I.   Legal Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

The Ninth Circuit has applied section 2254(d) to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006); Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (per curiam); McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (assuming without deciding that AEDPA deferential standard of review under § 2254 applies to such decisions).

**A.     Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

**1.     Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the

"contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is

6

more general, the state courts have more leeway. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. <u>Andrade</u>, 538 U.S. at 75-76 (rejecting <u>Van Tran</u>'s use of "clear error" standard); <u>Clark</u>, 331 F.3d at 1067-69 (acknowledging the overruling of <u>Van Tran</u> on this point). After <u>Andrade</u>,

> [T]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

<u>Id.</u> In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054 (9th Cir. 2003).

**B.    Section 2254(d)(2)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state court record. <u>Taylor v. Maddox</u>, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**C.    Exhaustion**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. <u>See</u> 28 U.S.C. § 2254(b), (c). Petitioner's state court remedies were exhausted as his

claims were presented to and denied by the California Supreme Court.

## II. Due Process Claims

### A. Applicable Legal Standard

"In analyzing the procedural safeguards owed to an inmate under the Due Process clause, [a court] must look at two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural safeguards." Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir. 2003). The second prong of this test is satisfied if (1) the inmate has been afforded an opportunity to be heard and, if denied parole, informed of the reasons underlying the decision and (2) "some evidence" supports the decision to grant or deny parole. See Sass, 461 F.3d at 1129 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Sass, 461 F.3d at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457). The some evidence standard of Hill is clearly established law in the parole context for purposes of § 2254(d). Id.

Three Ninth Circuit cases provide the guideposts for applying the Hill "some evidence" standard on this point: Biggs, Sass, and Irons v. Carey, 506 F.3d 951, 955 (9th Cir. 2007). Biggs explained that the value of the criminal offense fades over time as a predictor of parole suitability:

> The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.

Biggs, 334 F.3d at 916-17. Biggs upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . .

8

1  should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying
2  him a parole date simply because of the nature of Biggs's offense and prior conduct would raise
3  serious questions involving his liberty interest in parole."  Id. at 916.  Next came Sass, which
4  criticized the Biggs statements as improper and beyond the scope of the dispute before the court:
5  "Under AEDPA it is not our function to speculate about how future parole hearings could proceed."
6  Sass, 461 F.3d at 1129.  Sass determined that the parole board is not precluded from relying on
7  unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-
8  offense behavior in determining parole suitability.  See id. (commitment offenses in combination with
9  prior offenses provided some evidence to support denial of parole at subsequent parole consideration
10 hearing).  Sass also put to rest any idea from Biggs that the commitment crime and pre-offense
11 behavior only support the initial denial of parole.  Irons determined that due process was not violated
12 by the use of the commitment offense and pre-offense criminality to deny parole for a prisoner
13 sixteen years into his seventeen-to-life sentence.  Irons emphasized that in all three cases (Irons, Sass
14 and Biggs) in which the court had "held that a parole board's decision to deem a prisoner unsuitable
15 for parole solely on the basis of his commitment offense comports with due process, the decision was
16 made before the inmate had served the minimum number of years required by his sentence."  Irons,
17 506 F.3d at 955.  Interpreting this statement from Irons, however, to suggest that the offense may
18 only be relied on until the minimum number of years has been reached would suffer the same
19 problem that Sass identified in Biggs:  it is not the holding of the case.  The dicta in Biggs and
20 Irons are speculative and do not determine when a denial of parole based solely upon the commitment
21 offense or pre-offense behavior violates due process.  Neither logic nor Irons compel a decision that
22 such reliance must cease when the prisoner reaches the minimum number of years in his sentence,
23 such as the fifteenth year of a fifteen-to-life sentence.
24 
25        The upshot of these three cases is that under Sass, the BPH may look at immutable events,
26 such as the nature of the conviction offense and pre-conviction criminality, to predict that a prisoner
27 is not currently suitable for parole even after the initial denial.  Under Biggs and Irons, however, the
28 weight attributable to these immutable events should decrease over time as a predictor of future

9

dangerousness as the years pass and the prisoner demonstrates favorable behavior. Sass did not dispute the principle that, all other things being equal, a murder committed fifty years ago is less probative of a prisoner's current dangerousness than one committed ten years ago. Not only is the passage of time in prison a relevant factor, exemplary behavior and rehabilitation in prison are relevant factors, according to Biggs and Irons. Hill's standard might be quite low, but it bars an arbitrary decision, and reliance on only the facts of a crime may eventually make for an arbitrary decision.

What little guidance has come from the Supreme Court suggests that judicial review should be extremely deferential to the original decisionmaker in the parole context. In addition to the very low evidentiary standard that Hill imposes, other Supreme Court comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 13 (1979).

> No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior. Our system of federalism encourages this state experimentation.

Id.

### B.    Parole for Murderers in California

California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years. A first degree murder conviction yields a minimum term of twenty-five years to life and a second degree murder conviction yields a minimum term of fifteen years to life imprisonment. See In re Dannenberg, 34 Cal. 4th at 1078; Cal. Penal Code § 190. The upshot of California's parole scheme described below is that a release date normally must be set unless certain factors exist, but the "unless" qualifier is so strict that parole is a rarity rather than the norm for murderers.

California Penal Code § 3041(a) states a BPH shall meet with an inmate one year before the prisoner's minimum eligible release date and shall normally set a parole release date. Penal Code § 3041(a).

> The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates.

Id.

Significantly, this statute also provides:

> The panel . . . shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore cannot be fixed at this meeting.

Id. § 3041(b).

One of the implementing regulations, Title 15 of the California Code of Regulations § 2401, provides:

> A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.

Cal. Code Regs. tit. 15, § 2401.

The regulation also provides:

> The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

Id. § 2402(a). The panel may consider all relevant and reliable information available to it. Id. § 2402(b).

The regulations contain a matrix of suggested base terms that is apparently the source of many prisoners' dashed hopes. The matrix provides three choices of suggested base terms for several categories of crimes. See Code Regs. tit. 15, § 2403. For second degree murders, the matrix of base terms ranges from a low of fifteen, sixteen or seventeen years, to a high of nineteen, twenty or twenty-one years, depending on certain facts of the crime.[4] Although the matrix is used to establish a

---

[4] One axis of the matrix concerns the relationship between murderer and victim, and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis

11

base term, this occurs only once the prisoner has been found suitable for parole. See id. § 2403(a). Here, Petitioner has served about twenty-four years in prison. However, he has not yet been found suitable for parole by the BPH.

The statutory scheme elevates a prisoner's suitability for parole above their expectancy in the early setting of a fixed date, which is designed to ensure term uniformity. In re Dannenberg, 34 Cal. 4th at 1070-71.

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis and brackets in original). Indeed, the very regulation that includes the matrix states that "[t]he panel shall set a base term for each life prisoner *who is found suitable for parole*." Code Regs. tit. 15, § 2403(a) (emphasis added). "[T]he Board, exercising its traditional broad discretion, may protect public safety *in each discrete case* by considering the dangerous implications of a life-maximum prisoner's crime individually." In re Dannenberg, 34 Cal. 4th at 1071 (emphasis in original). The California Supreme Court's determination of state law is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629 (1988); Sandstrom v. Montana, 442 U.S. 510, 516-17 (1979).

The California Supreme Court has also determined the facts of the crime alone may support a sentence longer than the statutory minimum, even if everything else about the prisoner is laudable.

> While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release.

---

for the relationship of murderer and victim are "participating victim," "prior relationship," and "no prior relationship." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," or "severe trauma." Each of the choices is further defined in the matrix. See Code Regs. tit. 15, § 2403(c).

In re Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.").

**C.  Analysis**

    **1.  Opportunity to Be Heard and Reasons for Denial**

Having found that California inmates still maintain a liberty interest in parole, the Court analyzes the second prong of the Biggs test. Under this prong, the first question is whether Petitioner was given an opportunity to be heard and whether he was given reasons for the parole denial. See Biggs, 334 F.3d at 913; Sass, 461 F.3d at 1126; Greenholtz, 442 U.S. at 16.

Petitioner fully participated in his parole hearing as evidenced by the transcript of the hearing. (Resp't Ex. 4.) Throughout the hearing, Petitioner was given the opportunity to make comments or objections in response to the BPH's statements, clarify any misunderstandings and give statements regarding his parole eligibility. (Id.) In addition, the BPH laid out detailed reasons for denying Petitioner parole, which are discussed further below. The Court finds that the BPH satisfied the requirements for due process under this prong.

    **2.  "Some Evidence" Standard**

The next question is whether there was some evidence to support the BPH's decision to deny parole. What little guidance has come from the Supreme Court suggests that the "some evidence" standard is extremely deferential to the original decisionmaker. See Hill, 472 U.S. at 454 (An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence; the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the decision-maker.). Moreover, the Supreme Court's comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442

U.S. 1, 13 (1979). "No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior." Id.

A prisoner's commitment offense, on its own, may justify parole denial if the BPH can "'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." Irons v. Carey, 505 F.3d 846, 852 (9th Cir. 2007) (quoting Dannenberg, 34 Cal. 4th at 1071).

Title 15 of the California Code of Regulations § 2402 sets forth the circumstances that tend to show unsuitability for parole release. Section 2402(c)(1) provides the nature of a commitment offense may justify denial if the "prisoner committed the offense in an especially heinous, atrocious or cruel manner." Code. Regs., tit. 15 § 2402(c)(1). The factors considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents;

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder;

(C) The victim was abused, defiled or mutilated during or after the offense;

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; and

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

Id. Further, Penal Code § 3042(f)(3) states that the BPH must consider the statements and recommendations made by the district attorney's office, the investigating law enforcement agency, and the victims or their next of kin who have requested to speak. See Dannenberg, 34 Cal. 4th at 1085.

14

The BPH's findings at the 2005 parole suitability hearing sufficiently demonstrate that Petitioner is unsuitable for parole pursuant to Title 15 of the California Code of Regulations § 2402 and California Penal Code §§ 3041(b) and 3042(f)(3). The BPH's decision was based upon (1) the gravity of the commitment offense and (2) Petitioner's extensive prior criminal history.

The BPH found Petitioner unsuitable for parole based on his commitment offense:

> . . . the panel reviewed all the information received from the public, relied on the following circumstances in concluding that you're not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. This really -- it's a one-year denial. It really is primarily based on the criminal offense.
>
> . . . .
>
> The comments that were made about the fact that you had tried to shoot her up with heroin prior to that evening that she just nodded off. The fact that there was, according to the coroner's report, something that's called paradenia -- bleeding on the side of the vein . . . and just a lot of questions and that -- it leads -- it leads to an insecurity as to whether or not you are accepting full responsibility.

(Resp't Ex. 4 at 50.)

The BPH also considered Petitioner's extensive prior history:

> . . . beginning in 1970, you'd had numerous arrests and convictions -- and/or convictions for petty theft, receiving stolen property, attempted burglary, assault, battery, transporting, importing or manufacturing or sale of dangerous drugs, criminal conspiracy, possessing marijuana for sale, violating several narcotics laws, conspiracy to sell marijuana, assault with a deadline weapon.

(Id. at 11.)

The BPH concluded that before Petitioner could be found suitable for parole, he needed to continue his participation in programs:

> I would just encourage you to keep up your good program. And just encourage you to as you prepare for your hearing next year, do a review on your Olsen file -- or do an Olson review on your central file and -- and look at what we're looking at and see if you can't help us come to a different decision.

(Id. at 51-52.)

The BPH identified the fact-specific reasons to support its conclusion that Petitioner was

unsuitable for parole. Contrary to Petitioner's arguments, the record shows that the BPH's findings were supported by some evidence. The records show that the BPH conducted a thorough review and consideration of Petitioner's individual factors tending to show unsuitability and suitability for parole. Indeed, the BPH recognized and commended Petitioner's continued "participat[ion] in NA group and involvement in anger management." (Id. at 52.) The BPH added, "[d]uring the past year you've been involved in juvenile diversion program, Framework for Recovery, and Seven Habits of Effective People, [and] improving relationship." (Id.) However, the BPH exercised its authority under state law to make a finding of unsuitability for parole based on the commitment offense. (Id. at 50.); see Dannenberg, 34 Cal. 4th at 1071; see also Rosenkrantz, 29 Cal. 4th at 682-83.

Having reviewed the facts of the crime as recited by the BPH and the other reasons stated for finding Petitioner ineligible for parole, the Court finds that there was some evidence in the record to support the BPH's decision. See Hill, 472 U.S. at 455-56.

In denying Petitioner's state petition, the Santa Clara Superior Court held that, after an individualized analysis, the BPH's denial of parole was not improper:

> The habeas corpus petition of DAVID M. BASILE must be denied . . . . As recognized by the board, the only substantial reason for the parole denial was the commitment offense itself. Petitioner has done very well in prison and that the denial was only for one year must be seen as the Board's recognition of this fact. However, there is some evidence that Petitioner's involvement, and the crime itself, was more egregious than either necessary or than other instances of first degree murder. The Board's matrix establishes that this crime was slightly more aggravated than average (III, C) accordingly, Petitioner's situation (a third parole denial) does not yet present the Due Process violation noted in Biggs v. Terhune (2003) 334 F.3d 910.

(Resp't Ex. 5 at 1.)

Because the superior court's decision is the last reasoned decision regarding Petitioner's challenge to the BPH's parole denial, it is this decision which this Court reviews under 28 U.S.C. § 2254(d). See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 547 U.S. 1138 (2006). Having reviewed the facts of the crime as recited by the parole board and the state court and the reasons stated for finding Petitioner

ineligible for parole, the Court finds there was "some evidence" in the record to support the BPH's decision because, at the time he was denied parole, Petitioner had served neither his minimum sentence of twenty-five years, nor the sentence recommended by the BPH's matrix (twenty-nine, thirty, or thirty-one years).  The Court concludes the state court's decision to uphold the BPH's parole suitability finding was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(2), nor was it contrary to, or an unreasonable application of, clearly established federal law, id. § 2254(d)(1).  Accordingly, Petitioner's due process challenge to the BPH's parole decision is DENIED.

The Ninth Circuit's evolving guidance in Biggs, Sass and Irons suggests that the BPH can continue to evaluate static factors, including the nature of the commitment offense, in deciding whether to grant parole.  See Sass, 461 F.3d at 1129.  The weight attributable to these immutable events, however, should decrease as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior.  See Biggs, 334 F.3d at 916-17; Irons, 505 F.3d at 851.  Should Petitioner continue to follow the BPH's advice by attending self-help programming and maintaining a positive disciplinary record, continued parole denials based on Petitioner's commitment offense alone could eventually give rise to a due process violation.

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.  The Court directs the Clerk of the Court to substitute Warden Ayers as Respondent in this action.

IT IS SO ORDERED.

DATED: 12/17/08

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DAVID MICHAEL BASILE,

        Plaintiff,

v.

ROBERT AYERS et al,

        Defendant.

Case Number: CV06-05371 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 19, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

David Michael Basile C70016
San Quentin State Prison
San Quentin, CA 94964

Dated: December 19, 2008

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk